78 N.J. Super. 327 (1963)
188 A.2d 444
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HUDSON COUNTY NEWS COMPANY, ETC., AND HUDSON COUNTY NEWS DEALERS SUPPLY COMPANY, ETC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1962.
Decided February 20, 1963.
*329 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Roger H. McGlynn argued the cause for appellants (Messrs. McGlynn, Stein & McGlynn, attorneys; Mr. Julius Kass, of counsel).
Mr. Harold J. Ruvoldt, Assistant Prosecutor, argued the cause for respondent (Mr. Lawrence A. Whipple, Hudson County Prosecutor, attorney; Mr. William A. O'Brien, of counsel).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Defendants appeal from judgments of conviction for the possession and sale of obscene magazines. The judgments were based on five indictments, four of which charged defendants with sale and distribution, and the fifth charged defendants with possession with intent to utter. There were six magazines involved in the judgments of conviction.
The applicable statute is N.J.S. 2A:115-2:
"Any person who, without just cause, utters or exposes to the view or hearing of another, or possesses with intent to utter or expose to the view or hearing of another, any obscene or indecent book, publication, pamphlet, picture, * * * or any person who shall sell, * * * or distribute or possess with intent to sell, * * * any obscene or indecent book, publication, pamphlet, picture * * * is guilty of a misdemeanor."
It is initially contended that this statute, under which defendants were indicted and convicted, is unconstitutional *330 because the statutory phrase "obscene or indecent" is vague and indefinite and lacking in proper standards. This, say defendants, is in violation of the due process clauses in the United States and New Jersey Constitutions.
Such argument lacks merit. In Roth v. United States, 354 U.S. 476, 1 L.Ed.2d 1498, 77 S.Ct. 1304 (1957), the Supreme Court of the United States held that the words "obscene, lewd, lascivious, or filthy * * * or other publication of an indecent character," as used in the federal obscenity statute, and the words "obscene or indecent" as used in the California Penal Code, when measured by common understanding and practice, gave adequate warning of the conduct proscribed, and marked boundaries sufficiently distinct for judges and juries fairly to administer the law.
Defendants next contend that the magazines in question are not obscene. They concede that obscenity, as such, is unprotected under the First and Fourteenth Amendments to the United States Constitution, Roth, supra, and N.J. Const., Art. I, par. 6, Adams Theatre Co. v. Keenan, 12 N.J. 267 (1953). However, defendants say that the only workable definition for criminal obscenity is "hard core pornography," and it is this type of obscenity which is proscribed by our statute and which is outside the constitutional protection afforded speech and press. Defendants point out that this interpretation of obscenity has been adopted in several of our states. People v. Richmond County News, Inc., 9 N.Y.2d 578, 216 N.Y.S.2d 369, 175 N.E.2d 681 (Ct. App. 1961); Attorney General v. The Book Named "Tropic of Cancer," Mass., 184 N.E.2d 328 (Sup. Jud. Ct. 1962). Contra, Monfred v. State, 226 Md. 312, 173 A.2d 173 (Ct. App. 1961). Cf. State v. Hudson County News Co., 75 N.J. Super. 363 (Cty. Ct. 1962).
We do not agree that the only workable definition for criminal obscenity is "hard core pornography." Obscenity and pornography are synonymous terms. The addition of the adjectival phrase "hard core" merely indicates a certain type of obscenity. Accordingly, we do not adopt the holding in *331 State v. Hudson County News Co., 75 N.J. Super., supra, at p. 375, that N.J.S. 2A:115-2, the statute here involved, must be interpreted to include within its prohibitions only those materials which may be regarded as "hard core obscenity or pornography and no more."
It is unquestioned that the Federal or a State Government may limit the meaning of obscenity, so called, to "hard core pornography." In New Jersey, however, our Supreme Court, in dealing with the phrase "lewd and indecent," established the test, "whether the dominant note of the presentation is erotic allurement `tending to excite lustful and lecherous desire,' dirt for dirt's sake only, smut and inartistic filth, with no evident purpose but `to counsel or invite to vice or voluptuousness.'" Adams Theatre Co. v. Keenan, 12 N.J., supra, at p. 272.
The United States Supreme Court, in holding that obscenity was outside the protection of the First and Fourteenth Amendments, stated that the test of obscenity was "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." Roth, supra, 354 U.S., at p. 489; 77 S.Ct., at p. 1311. In Manuel Enterprises, Inc. v. Day, 370 U.S. 478, 8 L.Ed.2d 639 (1962) recently decided, Justice Harlan, in an opinion concurred in by Justice Stewart, added the element of "patent offensiveness" to the test of obscenity set forth in Roth.
The magazines in the instant case consist of photographs of nude or almost nude female models in provocative poses, cartoons, and articles or stories which in the main have as their theme illicit sexual adventures. The stories include episodes of sexual perversions such as exhibitionism, voyeurism, sadism, masochism and nymphomania. It is impossible to describe the magazines accurately in words. They must be seen and read to realize their full impact.
Preliminarily, we agree with defendants' contention that the jury's findings that the magazines were obscene is not dispositive of the question. At the close of the state's *332 case defendants moved for judgments of acquittal on the ground that the magazines were not obscene. The trial court ruled that a prima facie case had been established and that a jury question was presented. However, since constitutional freedoms are involved, an appellate court has the duty to make its own determination as to whether or not the magazines are obscene, and thus outside the protection of speech and press contained in the First and Fourteenth Amendments to the United States Constitution and Article I, paragraph 6 of our New Jersey Constitution. Cf. Lockhart and McClure, "Censorship of Obscenity: The Developing Constitutional Standards," 45 Minn. L. Rev. 5, 119 (1960).
We have examined these magazines and find that their dominant theme taken as a whole is an appeal to prurient interest. They are patently offensive. To use the language of Adams, supra, their dominant note is erotic allurement tending to excite lustful and lecherous desire, dirt for dirt's sake only, smut and inartistic filth, with no evident purpose but to counsel or invite to vice or voluptuousness.
We find these magazines to be obscene, not because they deal with nudity and sex, but rather because of the nature of the treatment of these subjects and the manifest intent and purpose behind such treatment. The juxtaposition of photographs and stories, the provocative poses and captions, the advertisements and cartoons, all combine to lead inevitably to the conclusion that the dominant theme of the material as a whole is a deliberate appeal to prurient interest and nothing else. The magazines are utterly without redeeming social importance. Roth, supra, 354 U.S., at p. 484, 77 S.Ct., at p. 1308.
In making those findings and reaching those conclusions we have applied contemporary standards of decency.
Defendants argue that the standard to be applied is a national one since federal constitutional provisions are involved, and that error was committed at the trial because the testimony and court's charge "regarded the community standard as that of Hudson County."
*333 We find that the trial court did not apply an improper standard. It is to be presumed that the community standards of morality in Hudson County are the same as those in any other county in the State or Nation. A county is a recognized subdivision of a state. Unless it is demonstrated that the standards of morality in Hudson County are different from those in comparable political subdivisions, it cannot be said that improper standards were applied.
Defendants also say that the evidence does not establish beyond a reasonable doubt that the defendants knew the contents of the magazines to be obscene. We find there was ample proof to support a finding of scienter on defendants' part. These magazines were delivered without being ordered. Three retailers of magazines who appeared as witnesses for the State testified to numerous complaints made by them to defendants, either in person, in writing or by phone, that the magazines here involved were "objectionable" and "raw" and that they did not want any further deliveries of these magazines. As one witness put it, "They send what they want and you have got to take them whether you like them or not. You tell them to cut them down, they never cut them down."
Defendants' final argument is that their conviction of possession with intent to utter obscene material was an unconstitutional prior restraint. There is no merit to this contention. As heretofore noted, obscenity is not protected under the First or Fourteenth Amendments or our State Constitution. Obscenity has been denied protection under federal law against judicially imposed prior restraints. Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). Moreover, the statute here involved, N.J.S. 2A:115-2, does not restrain publication or distribution  even of obscene material. It does no more than penalize uttering or exposing or possession with intent to utter or expose. Cf. State v. Jackson, 224 Ore. 337, 356 P.2d 495, 500 (Sup. Ct. 1960).
Although not controlling in the instant case, it is noteworthy that by amendment effective October 18, 1962, the *334 New Jersey Legislature supplemented our criminal statute on indecency and obscenity by adding a definition for the word "obscene" as follows:
"The word `obscene' wherever it appears in the chapter to which this act is a supplement shall mean that which to the average person, applying contemporary community standards, when considered as a whole has as its dominant theme or purpose an appeal to prurient interest." N.J.S. 2A:115-1.1.
This is substantially the definition of "obscenity" given in the Roth case, supra.
The conclusion is that no error has been shown.
Affirmed.